[Civ. No. 6217.   Third Appellate District.—April 8, 1939.]

R. H. STROSNIDER, Appellant, v. ERNEST POMIN et al., Respondents.

Thomas Maul for Appellant.

O. D. Murdock, as *Amicus Curiae*, on Behalf of Appellant.

H. J. Kleefisch for Respondents.

TUTTLE, J.—This is an appeal from an order granting a motion for a change of venue from the county of El Dorado to the county of Placer. The motion was made by defendants and respondents on the ground that they were residents of the county of Placer. It is the contention of appellant that the trial court erred in granting the motion, for the reason that the action was local, and that the allegations of both the causes of action in the complaint brought the case within the provisions of section 392 of the Code of Civil Procedure, which provides in part as follows:

"(1) Subject to the power of the court to transfer actions and proceedings as provided in this title, the county in which the real property, which is the subject of the action, or some part thereof, is situated, is the proper county for the trial of the following actions:

"(a) For the recovery of real property, or of an estate or interest therein, or for the determination in any form, of such right or interest, and for injuries to real property;"

The first cause of action is admittedly one to quiet title to a right of way and easement. It is alleged that plaintiff is the owner of a right of way or easement as follows:

"A right of way forty feet in width extending from the West line of the N E ¼ of the N W fractional quarter of section 17, Township 14 N. R. 17 E., M. D. B. & M. Said strip extending easterly along the North boundary of said Sec. 17 to the shores of Lake Tahoe, and along said shore to the east boundary line of said N. E. ¼ of the N. W. ¼ of said sec. 17; said strip of land and right of way to be appurtenants to the N ½ of the S W ¼, and all of the N W fractional of Sec. 17, and to be used . . . as a way for the passage of pedestrians and vehicles over the above described land to the shores of Lake Tahoe from the lands adjacent to and abutting thereon."

It is also alleged that plaintiff is the owner of an easement described as: "An easement to the 340 feet of waterfront extending along the shore of Lake Tahoe in a general southerly direction from the most easterly point on the right of way first hereinabove described, including the right of wharfage and landing thereon, and the right to the use of the wharf, already constructed, and also the right to build a boathouse on the Lake front, and use and operate the same, or to use in

common the boathouse already constructed thereon.'' It is further alleged that defendants have constructed a barbed-wire fence, which obstructs said right of way, and that they still maintain, and now keep such fence in a manner that it is impossible for the plaintiff to use the said right of way, and that defendants are also obstructing the said easements and rights of way by the maintenance of two dwelling houses. The final allegation is that the claims of the defendants are wholly without right or color of title.

The second cause of action incorporates, by reference, all the allegations of the first cause of action. It is alleged that plaintiff filed an action in the county of El Dorado against Edward W. Gensberg, executor of the estate of Marion E. Pomin, deceased, for the purpose of quieting title to the property described in the first cause of action, and also seeking judgment in the sum of $29,000; that Ernest Pomin, one of the defendants acting for and on behalf, and with the knowledge and consent of the other defendants, verbally and in writing recognized the rights of plaintiff in the use of said rights of way and easements, and agreed and promised that plaintiff should have the free and uninterrupted use of those rights of way and easements; that thereafter, said Ernest Pomin, acting for the other defendants, opened up the said rights of way and easements to the free and uninterrupted use of plaintiff and other lot owners, in full recognition of the rights of plaintiff and the other lot owners; that said representations, agreements and promises were made fraudulently, and in bad faith, for the sole purpose of inducing the plaintiff to dismiss said quiet title action, and at the time said representations, agreements and promises were made, neither defendant Ernest Pomin, nor any of the other defendants, intended to perform them; that said false and fraudulent representations directly caused and induced plaintiff to dismiss said quiet title action; that defendants, fraudulently and in bad faith, thereafter erected an obstruction across said easements and rights of way, to wit, a barbed-wire fence, and still fraudulently and in bad faith maintain the said obstruction; that the lands of plaintiff are valuable for summer residences and homesites, and the said rights of way give the only access from plaintiff's lands to the shores of Lake Tahoe; and that the obstruction of said right of way by the defendants has

damaged plaintiff in the sum of $6,000. The following relief is prayed for:

"1. That the rights of the plaintiff hereto be declared in and to the rights of way and easements set forth and described in this complaint and in said Exhibits A and B.

"2. That the rights of the plaintiff in and to said rights of way and easements set forth and described in this complaint and in said exhibits A and B be quieted, and that it be adjudged and decreed that the plaintiff, his heirs, administrators, executors or assigns are the owners and entitled to the use and enjoyment of such rights of way and easements, and that the defendants be required to remove all obstructions and encroachments therein.

"3. That the plaintiff have judgment against said defendants in the sum of thirty-five thousand dollars ($35,000.00).

"4. That this court enter judgment and declare the defendants to be obligated to open and maintain said easements and rights of way.

"5. That the said defendants, their agents, servants, or employees and any and all persons claiming under them be forever restrained and debarred from interfering with the right of the plaintiff or his assigns in and to the free and uninterrupted use of said easements and rights of way, more particularly set forth and described in this complaint and in said Exhibits A and B. And that the said defendants, their agents, employees and servants be forever restrained and debarred from asserting any right, title or interest adverse to the plaintiff or his assigns in and to said easements and rights of way.

"6. That the said plaintiff have judgment for costs of this suit, and for such other and further relief as this court may deem meet and equitable."

It is conceded by respondents that if it were not for the second cause of action, the place of trial would be in El Dorado County. This is due to the fact that the first cause of action is merely an action to quiet title to real property, and comes directly and unquestionably under the provisions of the code section above cited. Respondents earnestly contend, however, that the second cause of action is personal and transitory in character, and that defendants are therefore entitled to have the case transferred to the county of their

residence, under the familiar rule that "if, in one complaint, there have been united allegations for relief in causes both transitory and real, defendants are likewise entitled to have the cause transferred to the county of their residence". (*Bardell* v. *Turner Co.*, 219 Cal. 228–230 [25 Pac. (2d) 978].) It becomes necessary, therefore, to carefully examine the allegations of the second cause of action in order to ascertain whether or not it is local or transitory.

We believe that the case of *Coley* v. *Hecker*, 206 Cal. 22 [272 Pac. 1045], supports the contention of appellant, and requires a reversal of the order. In that case the question before the court is thus stated:

"The first and principal point presented by appellants is that respondent having joined a real and personal action, to-wit, an action to quiet title to real property with an action to recover for a slander of title did thereby lose his right to hold the case in the county where the real property was situate. This contention is based upon the claim that an action for the recovery of damages for slander of title sounds in personal action and does not bring the venue within the purview of section 392, Code of Civil Procedure. Said section provides: 'Actions for the following causes must be tried in the county in which the subject of the action, or some part thereof, is situated, subject to the power of the court to change the place of trial, as provided in this code.

" '1. For the recovery of real property, or of an estate or interest therein, or for the determination in any form of such right or interest and for the injuries to real property. . . .

" '3. For the foreclosure of all liens and mortgages on real property.' "

After holding that the action was local, and that the second cause of action came under the section of the code quoted above, the court said:

"It is appellants' contention that by the term 'injury to property', as used in section 392, *supra*, it was intended to include only physical interference with, or physical injury to real property, such as waste, or some sort of physical trespass committed upon the lands, and that the term was not intended to be as broadly applied as its meaning would seem to imply. In addition to the construction which we feel constrained to place upon said section, and which is supported by the con-

struction given to practically the same language by the supreme court of Louisiana in *Labarre* v. *Burton-Schwartz etc. Co.*, 126 La. 982 [53 So. 113]), to the effect that slander of title is an actual intrusion upon one's property and is in the 'nature of a trespass, a real action to protect property', our conclusion is further fortified by eminent authority holding that a libel written or published in disparagement of title is in the nature of an action of trespass on the case. The term 'injury to real property' is in itself a wider and less technical term than 'trespass to real property'. As applied to questions of venue, it has been declared to embrace every wrong which in legal contemplation is an injury to real property, not only the direct and forcible injury, but consequential injuries, and threatened injuries to land, and even a mere nonfeasance, as permissive waste. (40 Cyc. 74; 17 R. C. L. 454.)

"The trend of the decisions of this court is generally in accord with the doctrine, whenever the question has come before it, that trespasses may be committed by consequential and indirect injuries as well as by direct and forcible injuries."

In the case before us, the cause of action is unquestionably based upon a tort—damages arising out of fraudulent representations made in respect to the dismissal of the prior quiet title action. The real question is: Damages to what? According to the allegations of the complaint, damages to the real property of plaintiff which would be affected by the obstruction of the right of way of defendants and which resulted from the dismissal of the prior action through the fraud of defendants. Thus it is clearly alleged that the fraudulent act injured the real property of plaintiff—a consequential injury which the court in the Hecker case held to be covered by the term "injury to real property".

The complaint also brings the action under that portion of section 392 of the Code of Civil Procedure which requires the action to be brought in the county where the real property is situated, where it is "for the recovery of real property, or an estate or interest therein, or for the determination *in any form* of such right or interest". It is quite clear, from a reading of the second cause of action, that plaintiff would have to prove ownership of his own real property, and of the easement in question, before he could establish any right to

damages. In our opinion this would call for the determination, in some form, of an estate and interest in real property.

The fallacy of respondents' position lies in the contention that by the term ''injury to property'', as used in section 392, above, it was intended to include only *physical* interference with, or *physical* injury to, real property, and that the second cause of action is based upon fraud. Hence, the section is inapplicable. This was the precise contention made in the Coley case, where it was held that such a narrow and restricted construction should not be made. (See quotation above.) It is true, as respondents state, that the second cause of action is for the recovery of damages based upon fraud and deceit, but those facts do not fix the character of the action as transitory, if the further fact appears, from the allegations of the complaint, that plaintiff, in order to make out a case under his pleading, must prove ownership of an interest in real property, and if the further fact appears that the damages, if any, must necessarily be predicated upon an immediate or consequential injury to the real property of plaintiff.

The admitted fact that plaintiff seeks to recover a money judgment does not necessarily stamp the action as transitory, if, according to the allegations of the complaint, such judgment is predicated upon damages to real property. Proof of fraud alone, in the dismissal of the former action to quiet title, would not result in a money judgment for plaintiff—he must go further and prove he was injured or damaged by such fraud. According to the allegations of the second cause of action, he was the owner of the easement. He alleges that, by reason of the fraudulent dismissal, ''defendant Ernest Pomin, did fraudulently and in bad faith erect, or cause to be erected across said easements and rights of way—an obstruction, to-wit, a barbed-wire fence; . . . that said defendant Ernest Pomin, did fraudulently, and in bad faith maintain, and does fraudulently and in bad faith maintain the said obstruction, to-wit, a barbed-wire fence''. It is prayed that defendants be compelled to ''open and maintain such easements and rights of way''. It is obvious from the foregoing that not only will the trial court be called upon to adjudicate, ''in some form'', a right or interest in real property, but also the matter of injury to said property. We have

carefully examined the authorities cited by respondents, but none of them are pertinent to the question here involved. In all of these cases the allegations of the complaint are the controlling factor, and a parallel situation necessarily is difficult to find.

Summing up the entire matter, we find that issues of title and injury to real property are so inextricably intermingled with the issue of fraud in the second cause of action, as to lead to the inevitable conclusion that the action is local in character. This conclusion is reached after considering the pleading as a whole, and with due respect to the rule that where fraud alone is relied upon, the action is transitory. Respondents' exposition of their position is scholarly and exhaustive, but we cannot adopt their somewhat narrow and restricted view of the scope of section 392 of the Code of Civil Procedure. The law requiring actions of this character to be tried in the county where the real property is situated is based upon sound principles. All the records relating to the title are immediately available at the county seat, and the expense and inconvenience of taking local officers from the place of their employment and subpoenaing them to appear in some other county, and procuring of certified copies of the records, is obviated.

We are therefore of the opinion that the proper place for the trial of this action is in El Dorado County, and that the court erred in granting the change of venue.

The order is reversed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 8, 1939, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 1, 1939.